Filed 6/2/17

# <u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID MARTIN CALISTRO,<br><br>    Defendant and Appellant. | F070176<br><br>(Super. Ct. No. BF153533A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Harry (Skip) A. Staley, Judge.  (Retired Judge of the Kern Sup. Ct. assigned by the Chief Justice pursuant to article VI, § 6 of the Cal. Const.)

Jyoti Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Carlos A. Martinez, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

Defendant David Martin Calistro raises four issues on appeal.  He requests that we independently review the records reviewed by the trial court on his *Pitchess* motion[1] and

---

\*       Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., and IV. of the Discussion.

determine whether the trial court abused its discretion by not providing him access to more of those records. He also contends he was erroneously convicted under Penal Code section 666.5, subdivision (a)[2] (hereafter § 666.5(a)) and was erroneously convicted of both stealing a car and receiving the stolen property inside the car. Lastly, he contends the trial court should have stayed one of his terms pursuant to section 654. We vacate the sentence and remand for resentencing.

## PROCEDURAL SUMMARY

On February 27, 2014, the Kern County District Attorney filed a complaint against defendant charging him with receiving a stolen vehicle (§ 496d, subd. (a) (hereafter § 496d(a)); count 1); unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a) (hereafter Veh. Code, § 10851(a));[3] count 2); receiving a stolen vehicle (§ 496d(a); count 3); possessing a burglary tool (§ 466; count 4, a misdemeanor); and driving with a suspended license (Veh. Code, § 14601.2, subd. (a); count 5, a misdemeanor). The complaint also alleged in connection with counts 1 through 3 that defendant had served a prior prison term (§ 667.5, subd. (b)) for a 2005 conviction under section 496d(a).

At the preliminary hearing on April 11, 2014, the trial court granted the prosecutor's motion to add a section 666.5(a) enhancement to count 1.

On April 16, 2014, the district attorney filed an information charging defendant with unlawfully driving or taking a vehicle, having been previously convicted of receiving a stolen vehicle (§ 666.5(a); count 1);[4] receiving a stolen vehicle (§ 496d(a);

---

[1]    A *Pitchess* motion is a motion for discovery of a peace officer's confidential personnel records. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).)

[2]    All statutory references are to the Penal Code unless otherwise noted.

[3]    At trial, Vehicle Code section 10851(a) was often referred to simply as Vehicle Code section 10851.

[4]    This count did not refer to Vehicle Code section 10851(a), but the charging language (other than the reference to a previous conviction) was the same as in count 3.

2.

count 2); unlawfully driving or taking a vehicle (Veh. Code, § 10851(a); count 3); receiving stolen property (§ 496, subd. (a) (hereafter § 496(a)); count 4); possessing a burglary tool (§ 466; count 5, a misdemeanor); and driving with a suspended license (Veh. Code, § 14601.2, subd. (a); count 6, a misdemeanor). The information also alleged in connection with counts 1 through 4 that defendant had served a prior prison term (§ 667.5, subd. (b)) for a 2005 conviction under section 496d(a).

On April 30, 2014, defendant made a *Pitchess* motion requesting disclosure of personnel records relevant to Bakersfield Police Officer Tiffany Beltran's dishonesty. On May 27, 2014, the trial court conducted an in camera hearing and ordered some records disclosed.

On August 18, 2014, defendant pled no contest to driving with a suspended license (Veh. Code, § 14601.2, subd. (a); count 6, a misdemeanor). He also admitted the prior prison term allegation (§ 667.5, subd. (b)) connected to counts 1 through 4. The trial court explained that the allegation would add a year to any sentence he received, and it would also increase the penalty range for a section 666.5(a) conviction from 16 months/two years/three years to two years/three years/four years. Defendant stated he understood he was admitting the allegation was true.

Defendant went to trial on the remaining charges. Before the verdict forms were submitted to the jury, the counts were renumbered as follows: count 1 was renumbered to count 5; count 2 was renumbered to count 1; count 3 was renumbered to count 2; count 4 was renumbered to count 3; and count 5 was renumbered to count 4. The jury returned guilty verdicts on unlawfully driving or taking a vehicle (Veh. Code, § 10851(a); count 2); receiving stolen property (§ 496(a); count 3); and possessing a burglary instrument (§ 466; count 4, a misdemeanor). No verdict form on the section 666.5(a) charge (count 5) was submitted to the jury, and the jury was not polled on any findings related to this charge.

3.

The trial court sentenced defendant to four years in prison as follows: three years on the section 666.5(a) conviction (count 5); two years on the Vehicle Code section 10851(a) conviction, to be stayed pursuant to section 654 (count 2);[5] two concurrent years on the section 496(a) conviction (count 3); and one year for the prior prison term enhancement (§ 667.5, subd. (b)).

## FACTS

On February 24, 2014, at about 9:30 p.m., Peter B. was in his upstairs apartment on either Lincoln Avenue or Lincoln Street in Bakersfield[6] when he heard his car start in the parking space below him. He heard the car take off, and when he reached his balcony, he saw his Honda Accord going north down the alley. He could not see who was driving because the car's windows were tinted. He had locked the car, leaving his wallet inside. His wallet contained his driver's license, bank cards, and CalFresh card. His child's cell phone was also in the car. He had not given anyone permission to take his car, his wallet, or his wallet's contents. He jumped into another car and drove around looking for his car for about an hour. Meanwhile, his mother-in-law called the police.

About five hours later, at around 2:30 a.m., Kern County Sheriff's Deputy Lorena Morales approached a Honda Accord at a 7-Eleven store at the corner of Chester and Day Avenues, less than five miles from Peter's apartment.[7] Defendant was sitting in the driver's seat and the car was turned off. It was parked near a gas pump, but gas was not

---

[5] The abstract of judgment incorrectly reflects the term on count 2 as concurrent rather than stayed.

[6] Peter testified his particular address was on Lincoln. On our own motion, we take judicial notice that both Lincoln Avenue and Lincoln Street exist in Bakersfield. (Evid. Code, §§ 452, subd. (h), 459, subd. (a); *In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1153.)

[7] We take judicial notice that the driving distance between an apartment on Lincoln Avenue and the corner of Chester and Day Avenues is approximately 1.7 miles, and the driving distance between an apartment on Lincoln Street and the corner of Chester and Day Avenues is approximately 4.5 miles.

4.

being pumped. Deputy Morales searched defendant and found credit cards in his pockets, all of them bearing Peter's name.[8] An Acura key was in the car's ignition. The key was a shaved key, made to fit many vehicles and commonly used to steal vehicles. At this point, Deputy Morales turned the investigation over to the police.

When Officer Beltran arrived, defendant was seated in the back of a deputy's patrol vehicle. The Honda Accord was still parked at a gas pump. Deputy Morales gave Officer Beltran the shaved Acura key and the three cards bearing Peter's name. Officer Beltran explained that shaved keys can sometimes start older model Hondas. When Officer Beltran searched the car, she found a wallet containing Peter's driver's license and also a cell phone, both on the front passenger seat. She read defendant his *Miranda*[9] rights and he agreed to talk. He said the car belonged to his friend, Ben. He would not give Ben's last name. Defendant said he had borrowed the car from Ben in Alta Vista a few hours earlier and he drove it until it ran out of gas at the 7-Eleven. Officer Beltran asked him to whom the credit cards belonged. He said, "[T]he owner of the car, I guess."

---

[8] The cards found in defendant's pockets were usually referred to as credit cards at trial. The exhibits show them as two debit cards and one Golden State Advantage card (a state electronic benefit transfer card).

[9] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

*Defense Evidence*

Defendant testified on his own behalf. He said he was 29 years old and had lived in Bakersfield his whole life. He rented an apartment and had a job. He was making payments on his own vehicle.

On February 24, 2014, defendant was relaxing at home. At about 8:00 p.m., he went to a barbecue with some friends in the Alta Vista part of town, on the corner of Alta Vista and Linden.[10] His girlfriend dropped him off on her way to work. At the barbecue, he saw Ben, a friend of a friend. Ben's last name might have been Sanchez. Defendant drank at the barbecue, but he was sober, so he volunteered to go to the store to get more beer. Ben, who was intoxicated, gave him his keys and told him to come right back. Defendant did not have his own car, so he took Ben's car to the 7-Eleven. He trusted Ben. Defendant left the barbecue at about 12:30 a.m. He did not run out of gas; he put $5 or $10 worth of gas in the car at the 7-Eleven after prepaying with cash. He sat in the car for five or 10 minutes while he pumped gas and talked to his girlfriend on the phone. As he was talking on the phone, Deputy Morales approached him and asked him how long he had been sitting there because the 7-Eleven clerk was concerned. He told her he had just finished pumping gas and was getting ready to leave. Deputy Morales walked back to her vehicle. Defendant continued talking on the phone in the car. After about five minutes, Deputy Morales returned and asked him to get out of the car and put his hands behind his back. When he asked her why, she told him the car had been reported stolen. He told her he had only borrowed the car, which belonged to his friend, Ben, and

---

**10** The reporter's transcript spells Linden as "Lyndon." We take judicial notice that Alta Vista Drive intersects Linden Avenue in Bakersfield, but does not intersect any roadway called Lyndon. We also take judicial notice that the corner of Alta Vista Drive and Linden Avenue is approximately 3.2 miles from an apartment on Lincoln Avenue, approximately 1.0 mile from an apartment on Lincoln Street, and approximately 4.4 miles from the corner of Chester and Day Avenues.

he had just gone to the store. He did not tell her he had gotten the car a few hours earlier because he had actually gotten it only 20 or 30 minutes earlier. He did not tell her that he was homeless and had nowhere to go, or that he drove the car until it ran out of gas. When he said the credit cards in the car must belong to the owner, Ben, he had no idea the cards bore a name other than Ben's.

Defendant denied ever speaking to Officer Beltran. Furthermore, he never had the credit cards in his pocket. He did not see the credit cards until the car was searched. The keys Ben had given him looked normal and the car key worked. He did not suspect anything. Had he known the car was stolen, he would not have taken the keys and driven the car.

Defendant admitted he had been convicted of theft-related offenses in 2005 and 2011. He said he did not steal this car because he did not need to. He had been working since 2011 and he would not risk his job or anything else by stealing a car or driving a stolen car.

On cross-examination, defendant said he did not notice the Acura symbol on the car key because it looked like a Honda key. It took him about 15 minutes to drive from the barbecue to the 7-Eleven, so he must have been guessing about leaving the barbecue at 12:30 a.m. because Deputy Morales approached him at 2:30 a.m. He never mentioned to Deputy Morales or Officer Beltran that he had been at the barbecue. Neither Deputy Morales nor Officer Beltran found the credit cards on his person. And he did not speak to Officer Beltran or receive his *Miranda* rights from her. Defendant said the shaved key looked like a normal key, and an Acura key could start a Honda if the ignition had been swapped.

## DISCUSSION

**I.** *Pitchess* **Motion**[*]

Before trial, defendant made a *Pitchess* motion requesting disclosure of Officer Beltran's personnel records relevant to dishonesty, including false statements in reports, false testimony, and any other evidence or complaints of dishonesty. The trial court granted the motion for an in camera review. After reviewing the records, the court ordered three records disclosed. We have reviewed the records and see no abuse of discretion.

"A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045." (*Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 318.) "[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] … If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.] Subject to certain statutory exceptions and limitations [citation], 'the trial court should then disclose to the defendant "such information [that] is relevant to the subject matter involved in the pending litigation." ' " (*People v. Gaines* (2009) 46 Cal.4th 172, 179.)

A trial court's decision on a *Pitchess* motion is reviewed under an abuse of discretion standard. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.) The exercise of

[*]     See footnote, *ante*, page 1.

8.

that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) We review the record for "materials so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.) The record of the trial court's in camera hearing is sealed, and appellate counsel are not allowed to see it. (See *People v. Hughes* (2002) 27 Cal.4th 287, 330.) Thus, on request, the appellate court must independently review the sealed record. (*People v. Prince, supra,* at p. 1285.)

After reviewing the file of confidential records and the transcript of the in camera hearing, we have found no abuse of discretion committed by the trial court in its choice of which records to disclose and which not to disclose. The court appropriately disclosed the records relevant to the litigated matter.

## II. Section 666.5(a) Conviction[*]

Defendant contends he should not have been convicted under both Vehicle Code section 10851(a) and section 666.5(a). He argues that section 666.5(a) does not describe a substantive offense, but instead increases the punishment for a Vehicle Code section 10851(a) conviction. The People concede. We agree in theory, but conclude reversal is not necessary.

Section 666.5(a) imposes greater punishment on car thieves who have prior convictions for related conduct.[11] For example, a defendant with a prior felony

---

[*]     See footnote, *ante*, page 1.

[11]     Section 666.5 provides: "(a) Every person who, having been previously convicted of a felony violation of Section 10851 of the Vehicle Code, or felony grand theft involving an automobile in violation of subdivision (d) of Section 487 or former subdivision (3) of Section 487 …, or felony grand theft involving a motor vehicle …, any trailer …, any special construction equipment …, or any vessel …, or a felony violation of Section 496d regardless of whether or not the person actually served a prior prison term for those offenses, is subsequently convicted of any of these offenses shall be

9.

conviction for vehicle theft or receiving a stolen vehicle may be punished for two years/three years/four years, rather than the usual 16 months/two years/three years, upon his conviction of a similar offense. (§ 666.5(a).) As the parties recognize, section 666.5(a) does not define a new offense, but merely increases the punishment for the crime. (*People v. Young* (1991) 234 Cal.App.3d 111, 113, 115 [§ 666.5(a) does not define a new offense, following *People v. Bouzas* (1991) 53 Cal.3d 467, 478, which held petty theft with a prior (§ 666) is not an enhancement provision, nor is the prior conviction an element of the offense; rather, the statute specifies punishment for the present offense and makes the prior conviction a sentencing factor]; *People v. Demara* (1995) 41 Cal.App.4th 448, 452, 455 [§ 666.5(a) imposes a greater base term, not an enhancement; hence, the same prior conviction may be used both to impose an elevated sentence under § 666.5(a) and to enhance the sentence under § 667.5]; see *People v. Robinson* (2004) 122 Cal.App.4th 275, 281 [§ 666 does not establish a separate substantive offense or enhancement, but rather establishes an alternate and elevated penalty].) Consequently, conviction under section 666.5(a) is not possible.

In this case, the jury was never instructed on the section 666.5(a) charge (count 5) and was not given a verdict form on that count. Thus, there was no jury finding to support a section 666.5(a) conviction, which would have been improper at any rate. The parties understandably assume a conviction exists because the trial court proceeded to sentence defendant on the nonexistent conviction.

---

punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, or a fine of ten thousand dollars ($10,000), or both the fine and the imprisonment. [¶] (b) For the purposes of this section, the terms 'special construction equipment' and 'vessel' are limited to motorized vehicles and vessels. [¶] (c) The existence of any fact which would bring a person under subdivision (a) shall be alleged in the information or indictment and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury."

Because there is no conviction to reverse, we will vacate the sentence and remand to the trial court for resentencing, with directions to sentence the Vehicle Code section 10851(a) conviction (count 2) pursuant to the sentencing provision of section 666.5(a). The corrected abstract of judgment shall not include a conviction under section 666.5(a).

## III. Section 496(a) Conviction

Defendant contends that the "single larceny doctrine" bars his conviction for receiving the stolen credit cards under section 496(a) (count 3) because he came into possession of the credit cards at the same time he stole the car containing them. As relevant here, the single larceny doctrine holds that when a defendant steals multiple items during the course of a single act or indivisible transaction involving a single victim, he commits only one theft, notwithstanding the number of items he steals. (*People v. Ortega* (1998) 19 Cal.4th 686, 699, overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229.) The People concede. We, however, disagree for the reasons we explain below.

### A. *Vehicle Code Section 10851(a)*

In count 2, defendant was convicted of violating Vehicle Code section 10851(a), which provides:

> "Any person who *drives or takes* a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty …." (Italics added.)

By its terms, the statute can be violated in two ways—by *taking* the vehicle (theft) or by *driving* the stolen vehicle after the theft is complete ("posttheft driving"). (*People v. Garza* (2005) 35 Cal.4th 866, 871, 876 (*Garza*).) "[A] defendant who steals a vehicle and then continues to drive it after the theft is complete commits separate and

11.

distinct violations of section 10851(a)." (*Id.* at p. 880.) The theft of the vehicle may be considered complete when the driving is not "part of the original taking" (*People v. Strong* (1994) 30 Cal.App.4th 366, 375-376 (*Strong*)); when the driving is "an act distinct from the taking" (*People v. Cratty* (1999) 77 Cal.App.4th 98, 103 (*Cratty*); when the driving is "for purposes unconnected with the original taking" (*People v. Malamut* (1971) 16 Cal.App.3d 237, 242); "when the driving is no longer part of a ' "continuous journey away from the *locus* of the theft" ' " (*Garza,* at p. 880); or when the driving is not part of the escape from the scene of the theft (see *People v. Carroll* (1970) 1 Cal.3d 581, 585). "One might also suggest that the taking is complete when the taker reaches a place of temporary safety. [Citation.] Whatever the precise demarcation point may be …, once a person who has stolen a car has passed that point, further driving of the vehicle is a separate violation of [Vehicle Code] section 10851(a) that is properly regarded as a nontheft offense …." (*Garza,* at pp. 880-881.)

One reason the distinction between taking and driving is important in a Vehicle Code section 10851(a) prosecution is the possible application of what could be called the "taking and receiving doctrine"—the principle that a person cannot be convicted of both taking and receiving the same property (*People v. Jaramillo* (1976) 16 Cal.3d 752, 757; see § 496(a) [codifying common law rule: "no person may be convicted both pursuant to this section and of the theft of the same property"]). If the Vehicle Code section 10851(a) conviction is for *taking* the vehicle, it is a theft conviction and it bars a conviction for receiving the same vehicle as stolen property. But if the Vehicle Code section 10851(a) conviction is for posttheft *driving*, it is not a theft conviction and it does not bar a conviction for receiving the same vehicle as stolen property. (*Garza, supra,* 35 Cal.4th at p. 871; *Strong, supra,* 30 Cal.App.4th at pp. 373-374.)

A second reason the distinction between taking and driving is important in a Vehicle Code section 10851(a) prosecution is the possible application of the single larceny doctrine, raised by defendant here—the principle that a person who steals

12.

multiple items in an indivisible transaction commits only one theft and thus cannot be convicted of multiple thefts (*People v. Ortega, supra,* 19 Cal.4th at p. 699). If the Vehicle Code section 10851(a) conviction is for *taking* the vehicle, it is a theft conviction and it can bar a conviction for another theft occurring during an indivisible transaction. But if the Vehicle Code section 10851(a) conviction is for posttheft *driving*, it is not a theft conviction and it does not bar a conviction for a theft occurring during an indivisible transaction.

Here, the parties conclude that the Vehicle Code section 10851(a) offense in this case was a *taking* offense, not a driving offense, because the trial court treated it as such when it instructed the jurors with CALCRIM No. 3516—which addressed the first principle above—informing the jurors that if they convicted defendant under Vehicle Code section 10851(a), they could not also convict him of receiving the stolen car under section 496d(a) (count 1).

And because the parties agree that the Vehicle Code section 10851(a) offense was a *taking* offense, they also agree—under the second principle above—that defendant's taking of the car and his receiving of the stolen credit cards inside the car (count 3) occurred at the same time during an indivisible transaction and constituted a single larceny for which defendant can be convicted only once.

Our analysis of these points requires some factual background.

### B.    *Background on Count 2*

The information charged defendant in count 2 with "willfully and unlawfully driv[ing] or tak[ing] a certain vehicle … in violation of … Vehicle Code section 10851(a), a felony." (Unnecessary capitalization removed.)

During her opening statement, the prosecutor explained the evidence she would elicit at trial, then summarized:

> "That's the case. That's all I have to present to you. And, ladies and
> gentlemen, at the end of this case I'm going to talk to you about the law

13.

that applies and how this evidence shows beyond a reasonable doubt that this man was the one who *stole* Peter['s] vehicle[,] took his cards, and did not have permission to be in possession of any of those. At the end of this trial I will ask you to find the defendant guilty of all the counts he's charged of." (Italics added.)

Defense counsel responded:

"[Defendant] was in the car at the [7-Eleven]. The car had been stolen…. [Peter will] tell you that he didn't see who took the car. He doesn't know how that person got in the car. He doesn't know how that person started the car. He has no idea who took his car. All he knows is someone took his car. About five hours later [defendant] is in the car at a [7-Eleven]. [¶] … All your [*sic*] gonna hear is that he was in the car at [7-Eleven] and that car had been stolen previously. If you hold the People to their burden you'll find that [defendant] is not guilty."

After presentation of the evidence, the trial court instructed the jury on counts 1 and 2 as follows:

"The defendant is charged in Count 1 with possessing a stolen vehicle, in violation of Penal Code Section 496d(a). To prove the defendant is guilty of this crime, the People must prove that, one, the defendant received or withheld from its owner a vehicle that had been stolen, and two, when the defendant received or withheld the vehicle, he knew that the property had been stolen. [¶] A vehicle is stolen if it was obtained by any type of theft. Theft includes obtaining property by larceny. To receive property means to take possession and control of it. Mere presence near or access to the property is not enough. Two or more persons can possess the same property at the same time. [¶] … [¶]

"The defendant is charged in Count 2 with unlawfully *taking or driving* a vehicle, in violation of Vehicle Code section 10851. [¶] To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant *took or drove* someone else's vehicle without the owner's consent and, two, when the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time. [¶] A taking requires that the vehicle be moved for any distance, no matter how small. A vehicle includes a passenger vehicle." (Italics added.)

Then the court instructed with its version of CALCRIM No. 3516 on the taking and receiving doctrine:

14.

"The defendant is charged in Count 1 with a violation of Penal Code Section 496d(a), unlawful possession of a stolen vehicle, and in Count 2 with a violation of Vehicle Code Section 10851, unlawfully *taking or driving* a vehicle. [¶] You must first decide whether the defendant is guilty of a violation of Vehicle Code Section 10851. If you find the defendant guilty of a violation of Vehicle Code Section 10851, you must return the verdict form for Penal Code Section 496d(a), unsigned. [¶] If you find the defendant not guilty of a violation of Vehicle Code Section 10851, you must then decide whether the defendant is guilty of a violation of Penal Code Section 496d(a)." (Italics added.)

The prosecutor thereafter argued count 2 to the jury as follows:

"Let's look at … Count 2, Vehicle Code 10851. [¶] Here you have two elements. The defendant *took or drove* somebody else's vehicle without the owner's consent, and when he did so, he intended to deprive the owner of the car.

"And so, again, we're not really disputing—we're not really fighting over element one. We know that the defendant *drove* somebody else's vehicle without the owner's consent. [¶] We have [Peter] come in and he told you no one had permission to *drive* my vehicle, certainly not a man named David Calistro. [¶] We also know that the defendant was *driving*. We have him admit it on the stand. He also admits to Officer Beltran. And we have circumstantial evidence. He, at some point, ended up at the [7-Eleven] somehow. And the only way you end up at the [7-Eleven] is basically by *driving* there. Nobody can pick up a car and drop it down. That's—first of all, things that are reasonable, and you under—or you can conclude that he *drove*, but in any case, direct evidence will show that he was *driving*. We're not disputing that.

"The second element when he did so is he intended to deprive the owner of possession. [¶] And ladies and gentlemen, here's what we're arguing over again. And in this case he didn't have to have knowledge that the car was stolen. That's not a requirement. What we have is that he intended to deprive the owner of the car. And in this case the defendant again admits he knew who the owner of the car was when he says I guess the cards in my pocket are—belong to the owner of the car. Well, he's acknowledging that [Peter] is the owner of that car. At that time, he has been in possession of a stolen vehicle for five hours. [¶] He at no time admits I'm going to return that car. No. He, in fact, is going to keep that car. He is intending to deprive [Peter] of the rightful ownership of his vehicle. And in this case, ladies and gentlemen, that element is easily—he *took* that vehicle at 9:30. He is in possession of a shaved key. He is in

15.

possession of all of [Peter's] identification, wallet, and cards. And five hours later, that's the period of time we're talking about, he intended to deprive [Peter] of the use of his car." (Italics added.)

The jury retired to deliberate, then returned to the courtroom with verdicts on all counts, including counts 1 and 2. In response, the court reinstructed the jurors with CALCRIM No. 3516 and sent them back to continue deliberations on counts 1 and 2, as follows:

> "So I'm going to send you back in to continue your deliberations on Counts 1 and 2. Look again at all of the instructions, consider all of the evidence, but look particularly at instruction number 3516. That will tell you how to handle the reaching of verdicts in Counts 1 and 2. [¶] So with that, we'll send you back in to continue your deliberations."

The jury submitted a note saying it had found defendant guilty on count 2 (Veh. Code, § 10851(a)) and wanted to submit the verdict on count 1 (§ 496d(a)) with the signature scratched off and receive further instructions. Outside the presence of the jury, the court proposed sending the jury a note instructing the jurors to reread CALCRIM No. 3516.

Defense counsel moved for a mistrial, stating:

> "First, it's clear that this jury either will not or cannot follow very simple instructions. We've already sent them back and they either cannot or will not follow those simple instructions. [¶] I don't think [defendant] can or will receive a fair trial with this jury."

The prosecutor objected:

> "Your Honor, yes, of course I'm going to object to a mistrial. This is a complicated area of the law deciding which counts, and they're not experienced in this. They have the instruction. I think there's some confusion on it, and I think the defendant and defense counsel [are] disingenuous in their motion, having heard the verdict. And there's no reason for a mistrial."

The court denied the motion, and sent the note to the jury with new, blank verdict forms for counts 1 and 2.

16.

After further deliberations, the jury returned with the two new verdict forms on counts 1 and 2. This time, the verdict form for count 1 was blank, and the verdict form for count 2 was guilty.

The verdict form on count 2 stated:

"We, the Jury, empaneled to try the above entitled cause, find the defendant, David Calistro, guilty of Felony, to wit: willfully and unlawfully *driving or possessing* a certain vehicle … without the consent of and with the intent to deprive the said owner of title to or possession of said vehicle in violation of [Vehicle Code] Section 10851(a), as charged in the second count of the Information."[12] (Italics added.)

### C. *Analysis*

Our analysis first seeks to determine whether defendant's Vehicle Code section 10851(a) offense was a *taking* or a *driving* offense. The parties conclude it was a *taking* offense because the trial court treated it as a taking offense when it instructed the jury with CALCRIM No. 3516 that a conviction under Vehicle Code section 10851(a) barred a conviction under section 496d(a). Defendant further explains that the court, the prosecutor, and the jury all treated the offense as a *taking* offense, based on the evidence and the instruction: "the facts of the offense and the court's instructions to the jury show that the court, the prosecution and ultimately the fact finder—the jury, treated the violation of Vehicle Code section 10851, subdivision (a) as a theft offense." The People explain that "[a]lthough a jury could have properly concluded that [defendant's] violation … was for the driving aspect and not the taking aspect, the court precluded the jury from doing so" with its instruction. The People also note that "the court itself determined that count II constituted a theft offense when it rejected the jury's verdict forms, re-read CALCRIM No. 3516, and sent the jury back twice for further

---

**12** The verdict form appears to be the only reference to the offense as driving or *possessing* (not taking) the car. In light of all the other proper references to the offense as taking or driving, we do not believe this language was likely to mislead the jury.

17.

deliberations. Thus, while it may be conceivable that a different court could have considered [defendant's] conviction on count II to constitute a non-theft offense and then properly convicted and sentenced him on both count II and count III, the actions of the court here precluded such a result."

### 1. CALCRIM No. 3516

As noted, the purpose of CALCRIM No. 3516 is to implement the taking and receiving doctrine—the principle that a defendant cannot be convicted of both taking and receiving the same property (*People v. Jaramillo, supra,* 16 Cal.3d at p. 757; see § 496(a)). "[T]he trial court has a duty to instruct the jury sua sponte that it cannot convict the defendant of unlawfully taking and of receiving the same stolen vehicle whenever the pleadings and the evidence raise the possibility of such a prohibited dual conviction." (*Strong, supra,* 30 Cal.App.4th at p. 376.)

The standard CALCRIM No. 3516 instruction, entitled "Multiple Counts: Alternative Charges for One Event—Dual Conviction Prohibited," provides in relevant part:

> "*<Give the following paragraph when the defendant is charged with both theft and receiving stolen property offenses based on the same incident.>*
>
> "[The defendant is charged in Count ___ with _____ *<insert theft offense>* and in Count ___ with _____ *<insert receiving stolen property offense>*. You must first decide whether the defendant is guilty of _____ *<insert name of theft offense>*. If you find the defendant guilty of _____ *<insert name of theft offense>,* you must return the verdict form for _____ *<insert name of receiving stolen property offense>* unsigned. If you find the defendant not guilty of _____ *<insert theft offense>* you must then decide whether the defendant is guilty of _____ *<insert name of receiving stolen property offense>*.]"

In this case, the trial court inserted into each "*theft offense*" blank the phrase "a violation of Vehicle Code section 10851," identifying it once as "unlawfully taking or driving a vehicle." The instruction as given stated:

18.

"The defendant is charged in Count 1 with a violation of Penal Code Section 496d(a), unlawful possession of a stolen vehicle, and in Count 2 with *a violation of Vehicle Code Section 10851, unlawfully taking or driving a vehicle*. [¶] You must first decide whether the defendant is guilty of *a violation of Vehicle Code Section 10851*. If you find the defendant guilty of *a violation of Vehicle Code Section 10851*, you must return the verdict form for Penal Code Section 496d(a), unsigned. [¶] If you find the defendant not guilty of *a violation of Vehicle Code Section 10851*, you must then decide whether the defendant is guilty of a violation of Penal Code Section 496d(a)." (Italics added.)

Unfortunately, this instruction was an erroneous statement of law. As we have explained, a Vehicle Code section 10851(a) offense is not necessarily a theft offense, and only if it is a theft offense does it bar a conviction for receiving the same vehicle as stolen property. If it is a *driving* offense, rather than a taking (theft) offense, it does not bar a conviction for receiving the same vehicle as stolen property. The instruction, as given here, did not clarify this distinction, but instead instructed that a Vehicle Code section 10851(a) conviction for *either taking or driving* a vehicle would bar a conviction for receiving it as stolen property. The instruction should have informed the jurors that only a conviction for *taking* a vehicle would bar a conviction for receiving it as stolen property (*Garza, supra,* 35 Cal.4th at p. 871).

We note that CALJIC No. 17.04, entitled "Receiving Stolen Property and Vehicle Code Section 10851—One or Two Crimes Committed," which was not given in this case, correctly reflects the law according to *Garza, supra,* 35 Cal.4th 866 and specifically addresses the Vehicle Code section 10851(a) context:

"A defendant who is accused of the theft of property and of receiving the same property as stolen property cannot be convicted of both crimes. In this situation, the crimes are charged as alternatives. He may be found not guilty of both crimes, or guilty of one and not guilty of the other. If you find that the defendant committed an act or acts constituting theft of property or receiving the same property as stolen property, you must then determine which of the crimes charged was committed.

"In order to find the defendant guilty you must all agree as to the particular crime committed, and if you find the defendant guilty of one, you

19.

must find [him] [her] not guilty of the other[.][, as well as any lesser crime included therein.]  [¶]  …  [¶]

"The defendant is accused [in Count[s] ___] of violating Vehicle Code section 10851(a), namely the unlawful taking or driving of a vehicle. When a person unlawfully takes and drives away a vehicle with the intent to deprive permanently its owner of possession of the vehicle, the crime committed is a form of theft.  *However, a person who unlawfully drives a vehicle after the theft is complete, with the required intent, violates Vehicle Code section 10851(a), but the crime committed is not theft.  There is no prohibition against a person who engages in unlawful post-theft driving being found guilty both of receiving stolen property and a violation of Vehicle Code section 10851(a).*

"A theft of a vehicle is complete when the [driving is no longer part of a continuous journey away from the place of the theft] [or] [driving continues after the driver has eluded pursuers and reached a point of temporary safety]."  (Italics added.)

While the newer CALCRIM instructions have been endorsed by the California Judicial Council and are generally viewed as superior to the older CALJIC instructions (*People v. Thomas* (2007) 150 Cal.App.4th 461, 465-466), the CALJIC instructions are not necessarily defective or inadequate (*People v. Lucas* (2014) 60 Cal.4th 153, 294, disapproved on another ground in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19).  In this context, the CALJIC instruction appears to be the superior instruction. Use of CALCRIM No. 3516 in this case required further modification of the instruction to correctly state the law.

### 2. Trial Court, Jury, Prosecutor, and Evidence

We next turn to the parties' comments regarding any meaning that may be drawn from the trial court's giving of CALCRIM No. 3516, which the parties do not recognize as erroneous.  First, we note that what matters is not what the *trial court* believed, but how the erroneous instruction affected the *jury*.  And we disagree that the erroneous instruction demonstrates that the *jury* believed the offense was a *taking* offense.  The jurors were instructed that (1) they could convict defendant under Vehicle Code section 10851(a) if they found he *either took or drove* the car unlawfully (a correct

20.

statement of law), and (2) if they convicted him under Vehicle Code section 10851(a) for *either taking or driving* the car, they could not convict him for *receiving* the stolen car under section 496d(a) (an incorrect statement of law). Thus, these instructions demonstrate that the jurors found that defendant *either took or drove* the car—not that he *took* the car. Furthermore, these instructions demonstrate that if the jurors found that defendant *drove* the car in an act distinct from its taking, they were improperly precluded from convicting him of both *driving* the car under Vehicle Code section 10851(a) and *receiving* the car as stolen property under section 496d(a).

We also disagree that the erroneous instruction demonstrates that the *prosecutor* treated the offense as a *taking* offense. Although the prosecutor occasionally referred to defendant's taking of the car, she elected the *driving* theory during argument when she argued that the first element of Vehicle Code section 10851(a) was satisfied by defendant's driving of the car.

Finally, we disagree that the erroneous instruction demonstrates that the *evidence* established a *taking* offense. In fact, little evidence supported the inference that defendant *took* the car, even though the jurors may have believed that he did. But evidence that he *drove* the car was overwhelming. He was found sitting in the driver's seat of the car at a gas pump outside a 7-Eleven store. The car was not running, but a key was in the ignition. Defendant himself admitted, both at the scene and at trial, that he had been driving the car. And there was no evidence that anyone other than defendant was currently in possession of the car or had driven the car, or that defendant had arrived at the 7-Eleven by any means other than driving the car.

Furthermore, the evidence overwhelmingly supported the conclusion that even if defendant was in fact the car thief, his driving of the car was an act separate and distinct from its taking. He had long since left the *locus* of the theft, was no longer in the process of escape, and now felt sufficiently removed from the crime that he could stop for gas and linger in the stolen car at the 7-Eleven. Nothing suggested he was still in the process

of taking the car or fleeing the scene of the crime. Five hours had passed since the car was stolen, and defendant was at the 7-Eleven less than five miles from the scene of the theft, a journey that should have taken only a matter of minutes had he driven there directly. There was no evidence to suggest he had spent five hours fleeing the scene and seeking a place of safety, only to finally stop for gas a few miles away. On the contrary, he told Officer Beltran he had been driving the car for a few hours and had stopped because he needed gas, suggesting he was simply joyriding, not fleeing the scene of the theft. Moreover, he appeared to be in no hurry to leave the 7-Eleven or avoid detection.

In light of this overwhelming evidence of defendant's posttheft *driving*, even if every juror believed that defendant both took the car *and* drove it after the theft was complete, no reasonable juror could have found that he took the car *but did not drive it* after the theft was complete. (See *Strong, supra*, 30 Cal.App.4th at p. 372.) Thus, the jury necessarily found that defendant drove the car in an act that was distinct from and independent of the taking of the car. This act constituted a separate offense for which defendant could be separately convicted. (See *id.* at pp. 373-374.) Even if there had been substantial evidence that defendant took the car, such that the "evidence was consistent either with driving, or with taking and driving," "no reasonable juror could have found taking alone." (*Id.* at p. 372 [considering "whether a defendant convicted under [Vehicle Code] section 10851 based on a finding that he unlawfully drove a vehicle, and perhaps also based on a finding that he unlawfully took the vehicle, can be convicted of receiving or withholding the vehicle under section 496"].)

As *Strong* explained, "what matters is whether the driving was part of the theft, or an independent crime. If the evidence showed only one continuous violation of [Vehicle Code] section 10851, in which the driving was part and parcel of the taking, then a conviction for driving *or* taking under [Vehicle Code] section 10851 is a conviction for 'theft of the same property' which bars conviction under section 496. If, however, the evidence showed two distinct violations of [Vehicle Code] section 10851—one taking

22.

and one separately chargeable driving—then a conviction based on the unlawful driving is not a conviction for 'theft of the same property' and does not bar a conviction for receiving the same vehicle under section 496." (*Strong, supra,* 30 Cal.App.4th at pp. 373-374, 375 [defendant was found driving a pickup that had been stolen four days earlier; driving was separate offense and thus conviction was no bar to receiving the pickup as stolen property].) *Strong* concluded that the Vehicle Code section 10851(a) conviction was a driving conviction and it upheld dual convictions under Vehicle Code section 10851(a) and section 496. (*Strong*, at p. 372.)

In *Garza,* the Supreme Court considered "whether a conviction under [Vehicle Code] section 10851(a) for unlawful taking or driving of a vehicle bars a conviction under section 496(a) for receiving the same vehicle as stolen property when the evidence at trial adequately supported the section 10851(a) conviction on either a taking or a posttheft driving theory, the prosecutor argued both the taking and the posttheft driving theories to the jury, the trial court's instructions did not require the jury to choose between the theories and did not explain the rule prohibiting convictions for stealing and receiving the same stolen property, and the jury's guilty verdict did not disclose which theory or theories the jurors accepted." (*Garza, supra,* 35 Cal.4th at p. 871.) The court concluded that the Vehicle Code section 10851(a) conviction did not bar a section 496(a) conviction in that case because the court could construe the Vehicle Code section 10851(a) conviction as a *driving* conviction. The court explained: "The only reasonable inference that a juror could draw from the evidence at trial [citation] was that defendant had driven the car [to the strip mall parking lot] before being overcome by the effects of drug intoxication. The theft of the vehicle six days earlier was long since complete, and the driving therefore constituted a separate, distinct, and complete violation of [Vehicle Code] section 10851(a). Under these circumstances, we conclude that it is not reasonably probable that a properly instructed jury would have found defendant guilty of violating [Vehicle Code] section 10851(a) by stealing the car but not

by posttheft driving. Accordingly, we may uphold both convictions by construing defendant's conviction under [Vehicle Code] section 10851(a) as a nontheft conviction for posttheft driving." (*Garza,* at pp. 881-882, fn. omitted; see *Cratty, supra,* 77 Cal.App.4th at p. 103 [defendant was found driving a car that had been stolen eight months earlier; jury "necessarily found that he drove the car in an act distinct from the taking" and thus "necessarily found defendant violated the (nontheft) driving provision of [Vehicle Code] section 10851(a)"; "conviction under that section was not, therefore, a conviction for theft"; court upheld dual convictions under Vehicle Code section 10851(a) and section 496(a)]).

Here, we conclude the evidence showed two separate Vehicle Code section 10851(a) violations—a taking and a driving—such that defendant's conviction may be construed as a *driving* conviction. If defendant did take the car, his subsequent driving of the car—driving it around for hours and then finally driving it to the 7-Eleven for gas—was not part of the original taking. Consequently, defendant's nontheft conviction under Vehicle Code section 10851(a) did not bar a conviction for receiving the car as stolen property under section 496d(a) (count 1) or for receiving the stolen credit cards inside the car under section 496(a) (count 3). Thus, the jury could have convicted defendant on count 1—but was precluded from doing so by the erroneous instruction—and the conviction on count 3 may stand.

## IV.    Section 654*

Lastly, in a related argument, defendant contends that if we uphold the conviction on count 3 for receiving the stolen credit cards (§ 496(a)), which we have done, we should stay the sentence on that count pursuant to section 654 because the two offenses—taking the car and receiving the stolen credit cards—were based on the same act and objective. He argues his objective was to take the car, and he incidentally also received

---

*        See footnote, *ante*, page 1.

24.

the property inside the car; the act was indivisible and it stemmed from the single objective of taking the car. Thus, he says, he can only be *punished* for one crime under section 654. Again, the People concede and we disagree.

Section 654, subdivision (a) " 'precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. "Whether a course of criminal conduct is divisible … depends on the intent and objective of the actor." [Citations.] "If all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." ' " (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 129; *People v. Capistrano* (2014) 59 Cal.4th 830, 886 [" 'It is [the] defendant's intent and objective, not temporal proximity of his offenses, which determine whether the transaction is indivisible.' "].) However, if the defendant harbored "multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268.)

The determination of whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) Its findings will not be reversed on appeal if there is any substantial evidence to support them. (*Ibid.*) Imposition of a concurrent term without any express mention of section 654 implies a finding of multiple intents or objectives. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731.) We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. (*People v. Hutchins*, *supra*, at pp. 1312-1313.)

As we have explained, the evidence overwhelmingly established that defendant drove the car after the theft was complete, even if he had also taken the car. As for the

25.

credit cards, the evidence supported the inference that defendant removed Peter's credit cards from Peter's wallet (which was inside the car) and put them in his own pockets for his continued use, and that they would remain his personal property for the criminal purpose of purchasing goods or obtaining cash, regardless of whether he continued driving the car. In other words, it can be inferred from the evidence that defendant's receipt and concealment of the stolen credit cards was for an intent and objective separate from that of his driving (and possible taking) of the car. Substantial evidence supported the trial court's implicit finding of these separate intents and objectives. Under these circumstances, defendant may be punished for both the Vehicle Code section 10851(a) (count 2) and the section 496(a) (count 3) convictions.

## DISPOSITION

The sentence is vacated and the matter remanded to the trial court for resentencing with directions that the Vehicle Code section 10851(a) conviction (count 2) should be sentenced pursuant to the sentencing provisions of Penal Code section 666.5(a). A separate conviction under Penal Code section 666.5(a) (count 5) does not exist and shall not be included on the abstract of judgment. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and minute order and forward certified copies to the appropriate authorities.

_____
KANE, Acting P.J.

WE CONCUR:


_____
FRANSON, J.


_____
PEÑA, J.

26.