Filed 6/16/26  P. v. South CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARC RAYMOND SOUTH II,<br><br>Defendant and Appellant. | F088832<br><br>(Super. Ct. No. CR-23-005914)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Dina Petrushenko, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Franson, J. and Meehan, J.

Defendant Marc Raymond South II contends on appeal that (1) the judgment on count 2 must be reversed because there is insufficient evidence to support his conviction on that count, and (2) the abstract of judgment must be modified to accurately reflect his sentence. The People agree. We reverse the judgment on count 2 and vacate the sentence on that count. We direct the trial court to amend the abstract of judgment to accurately reflect defendant's sentence. In all other respects, we affirm the judgment.

## PROCEDURAL SUMMARY

On April 22, 2024, the Stanislaus County District Attorney filed an amended information charging defendant with unlawful use of a vehicle (Veh. Code, § 10851, subd. (a); count 1); receiving a stolen vehicle (Pen. Code,[1] § 496d, subd. (a) count 2); possession of a counterfeiting apparatus (§ 480, subd. (a); count 3); forgery (§ 476; count 4); and possession of identifying information with intent to defraud (§ 530.5, subd. (c)(2); count 5). It was further alleged that defendant suffered a prior strike and serious felony conviction (§ 667, subd. (d)), a prior theft conviction (§ 666.5), and circumstances in aggravation for sentencing.

On April 29, 2024, the trial court granted defendant's request to bifurcate the prior conviction and aggravating circumstance allegations. Defendant waived his right to a jury trial on the prior conviction and aggravating circumstances. Defendant stipulated that he suffered a prior conviction for violating section 530.5 for purposes of count 5.

On May 2, 2024, the jury found defendant guilty on counts 1 through 4 and found the value of the property at issue in counts 1, 2 and 4 exceeded $950. The jury found him not guilty of count 5.

On May 23, 2024, the trial court found true the prior conviction and aggravating circumstance allegations.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

2.

On October 17, 2024, the trial court denied probation and sentenced defendant to state prison for an aggregate term of 11 years four months, as follows: on count 1, eight years (the upper term, doubled); on count 3, two years (the midterm, doubled); and on count 4, 16 months (the midterm, doubled). The court stayed punishment on count 2 pursuant to section 654.

On October 22, 2024, defendant filed a timely notice of appeal.

## FACTUAL SUMMARY[2]

J.B. testified that shortly after 5:00 a.m. on May 19, 2023, he was working at a transportation company mechanic shop when he noticed a golf cart owned by the company that he had been using earlier that morning was missing from where he had parked it. He stated he had left the keys in it. J.B. testified that he notified another employee that it was no longer where he had left it and called the police to report it missing.

J.B. stated he had been working at the company for approximately 20 years when the golf cart went missing and estimated the golf cart was approximately 10 to 15 years old. He identified the golf cart in court from photographs admitted as exhibits. J.B. testified the company later got the golf cart back, but that several items, including a "Boombox" radio he owned, and jump boxes, motor oil and fire extinguisher owned by the company, that had been on or attached to the golf cart were missing when they got it back.

Joseph P. was the safety manager at the company. He testified that during business hours, the gates to the company premises were open, but that there were signs posted saying, "[Vendors] and employees only," because the public was not supposed to enter the company premises without permission.

---

[2]    As only the facts underlying count 2 are relevant to defendant's appeal, we omit the facts underlying defendant's other offenses.

Joseph stated that on the day the golf cart went missing, he was notified by a phone call from another employee that there had been a theft from the company premises. He stated he spoke to a couple of employees and reviewed the video surveillance camera recordings of the location where the incident occurred. The video recordings were admitted into evidence. He testified the video showed a male subject walk onto the premises through the open gates of the business and proceed through a restricted area without permission, past the signs that would have been plainly visible to him as he walked by. He stated the subject had a distinctive ponytail and appeared well groomed. He stated the video then showed him walking alongside the building to the parked golf cart. Another view from a surveillance video then showed the same subject driving the golf cart . He testified the video showed the subject "turned around, looked to the golf cart and sat in it and drove off" at approximately 5:07 a.m. Approximately five to six minutes elapsed between when the subject entered the premises on foot and when he drove it off the premises.

Joseph stated he dispatched approximately four safety officers to the area, who then drove around nearby streets and different locales to look for the golf cart. They were not able to locate the golf cart. Someone from the Stanislaus County Sheriff's Department took a statement from Joseph about the golf cart. He estimated the value of the golf cart was approximately $4,000. Joseph stated the company eventually got the golf cart back on June 2, 2023.

A former employee of the company, Jerry D., testified that Michael R., the director of maintenance at the company, contacted him when the golf cart could not be located. Jerry stated the company had owned the golf cart when he had worked there and he remembered it. Michael told Jerry it had been taken. Jerry frequently used an online resale website. After Michael told him about the missing golf cart, Jerry noticed it for sale on the resale website and contacted Michael. Jerry then inquired on the website about purchasing the golf cart from the seller and forwarded copies of his

communications with the seller to Michael. The seller offered to sell it to Jerry for $1,300 and gave him an address where he said it was located.

Michael testified that he received a phone call from J.B. on May 19, 2023, at 5:30 a.m. notifying him that the golf cart had been taken and that on June 1, 2023, Jerry D. notified him when he saw it for sale on the resale website and told him the address where the seller said it was located. He stated that he then drove around the area of the address Jerry had given him until he located it. He stated the location where he found it matched the location and pictures the seller had sent Jerry. Michael immediately contacted California Highway Patrol (CHP), but CHP did not respond that day.

Michael testified that the next day, June 2, 2023, he went back to the location with a friend. They approached a male subject at the location and Michael told the subject he had a stolen golf cart. The subject gave no indication that he knew anything about the golf cart or that it was stolen. The keys were missing, but Michael was able to start it and took it back to the company premises. The items that had been on or affixed to the golf cart when it was taken were missing.

Stanislaus County Sheriff's Department Deputy J. Taylor investigated the missing golf cart and reviewed the advertisement for it on the resale website. He was able to find an e-mail and phone number associated with the username "Marc," who had posted the online advertisement for the sale of the golf cart. He then found a public social media profile called "Marc Crazy Life Raymond" associated with that name and phone number, and later found and interviewed defendant, the owner of the social media profile. Taylor identified defendant in court. Taylor testified that defendant's appearance matched the appearance of the subject on the company's surveillance videos taking the golf cart on May 19, 2023.

Deputy Taylor testified that on June 20, 2023, he located defendant at a motel. Deputies surveilled defendant and followed him to a store, where he was arrested.

5.

<u>**DISCUSSION**</u>

## I.    COUNT 2

Defendant contends the judgment on count 2 for unlawfully receiving the golf cart pursuant to section 496d, subdivision (a) must be reversed and the stayed sentence on that count vacated because there is insufficient evidence to support the conviction. The People agree, as do we.

### A.    *Background*

The information alleged in count 1 that defendant unlawfully took and drove the golf cart (Veh. Code, § 10851, subd. (a)) and alleged in count 2 that he unlawfully received the same stolen golf cart (§ 496d, subd. (a)). The jury was instructed that to find defendant guilty of count 1, it had to find he "took" the golf cart. The prosecution argued to the jury that defendant was guilty of count 1 because he stole the golf cart from the company premises.

### B.    *Law*

Where a defendant challenges the sufficiency of the evidence supporting a criminal conviction, we apply the substantial evidence standard of review. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1212.) Accordingly, we review " ' "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Shively* (2025) 111 Cal.App.5th 460, 468.) "While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

Vehicle Code section 10851, subdivision (a) " 'proscribes a wide range of conduct.' [Citation.] A person can violate Vehicle Code section 10851(a) 'either by

6.

taking a vehicle with the intent to steal it or by driving it with the intent only to temporarily deprive its owner of possession (i.e., joyriding).' " (*People v. Garza* (2005) 35 Cal.4th 866, 871, 876.) A taking is complete when the "driving is not part of the escape from the scene of the theft." (*People v. Calistro* (2017) 12 Cal.App.5th 387, 395.)

"A person who violates section 10851 [, subdivision] (a) by taking a car with the intent to permanently deprive the owner of possession, and who is convicted of that offense on that basis, cannot also be convicted of receiving the same vehicle as stolen property. [Citations.] If, on the other hand, a [Vehicle Code] section 10851[, subdivision] (a) conviction is based on posttheft driving, a separate conviction under section 496[, subdivision] (a) for receiving the same vehicle as stolen property is not precluded. [Citations.]" (*Garza*, *supra*, 35 Cal. 4th at p. 876.)

When a defendant is improperly convicted of both stealing and receiving the same stolen property, the theft conviction should be upheld and the receiving conviction reversed. (*People v. Ceja* (2010) 49 Cal.4th 1, 10.)

### C.  *Analysis*

Here, as the parties agree, there is insufficient evidence to support defendant's conviction for count 2 for receiving the golf cart, pursuant to section 496d.

On May 19, 2023, defendant walked onto the company premises without permission and took the golf cart from where J.B. had left it parked. Later, Jerry noticed the golf cart for sale on a website online and was given an address from the seller for where it was located. On June 1, 2023, Michael then went to the location the seller had given Jerry and found the golf cart. On June 2, 2023, he returned to that location and took the golf cart back to the company premises.

No evidence was presented at trial as to what defendant did with the golf cart after taking it and before it was discovered at the residence. Accordingly, the parties agree that the evidence supports the theory that defendant was on one " 'continuous journey

7.

away from the *locus* of the theft' " with the golf cart after taking it from the company premises until it was placed at the location from which Michael later retrieved it. (See *People v. Strong* (1994) 30 Cal.App.4th 366, 375.) Further, at trial, the prosecution focused only the theory that defendant took the golf cart and likewise, the jury was only instructed on the taking theory. Accordingly, as the record supports defendant's conviction for taking the golf cart in count 1 pursuant to Vehicle Code section 10851, subdivision (a), it does not also support defendant's conviction for receiving the same golf cart in count 2 pursuant to section 496d, subdivision (a). We agree with the parties that defendant's conviction on count 2 must be reversed and the stayed sentence on that count must be vacated. (See *Ceja*, *supra*, 49 Cal.4th at p. 10.)

## II. ABSTRACT OF JUDGMENT

Here, the abstract of judgment must be corrected to accurately reflect defendant's sentence. As the People correctly note, the abstract of judgment does not accurately reflect defendant's sentence on count 3 and accordingly, it must be amended.[3]

Defendant was sentenced to 11 years four months, as follows: on count 1, eight years (the upper term, doubled); on count 3, two years (the midterm, doubled); and on count 4, 16 months (the midterm, doubled). The abstract of judgment correctly states that defendant was sentenced to 16 months on count 4. However, it incorrectly states defendant was sentenced to four years on count 1, rather than eight, and one year on count 3, rather than two. "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) Accordingly, we direct the court to prepare an amended abstract of judgment to accurately reflect defendant's sentence.

---

[3] Defendant did not file a reply brief. Accordingly, we interpret defendant's omission of a reply as agreement with the People on this issue.

8.

**DISPOSITION**

Defendant's conviction on count 2 is reversed, and the stayed sentence on that count is vacated. The trial court is directed to prepare and forward to all appropriate parties an amended abstract of judgment to reflect the reversal of count 2 and the vacation of the sentence on that count, and the correct sentence for counts 1, 3, and 4, as follows: on count 1, eight years (the upper term, doubled); on count 3, two years (the midterm, doubled), and on count 4, 16 months (the midterm, doubled). In all other respects, the judgment is affirmed.